# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

LIANNET AGUILAR LAMARQUE,    )
    )
    Petitioner,    )
    )
-vs-    )    NO.  CIV-26-0882-HE
    )
MARKWAYNE MULLIN, in his official    )
capacity as Secretary of the U.S.    )
Department of Homeland Security, et al.,[1]    )
    )
    Respondents.    )

## **ORDER**

Petitioner Liannet Aguilar Lamarque, through counsel, filed this habeas proceeding challenging her detention by U.S. Immigration and Customs Enforcement ("ICE"). The court directed respondents to file an answer or other response. Respondents have done so and petitioner has filed a reply. In addition, petitioner has filed a motion for judgment on the pleadings.

Petitioner requests immediate release from ICE custody or, alternatively, if the court orders a bond hearing, that it also order the burden be placed on the government to prove she is either a flight risk or a danger to the community. Federal respondents contend petitioner is an applicant for admission held pursuant to 8 U.S.C. § 1225(b)(2)(A), and as such, is subject to mandatory detention.

---

[1] *In accordance with Fed. R. Civ. P. 25(d), David Venturella, the acting director of U.S. Immigration and Customs Enforcement, is substituted as respondent for Todd Lyons.*

The record indicates petitioner is a native and citizen of Cuba who was "apprehended by DHS[2] upon entry near the border" on or about "November 7, 2022." [Doc. #1, ¶¶20-21, Doc. #6-1].  It indicates on November 8, 2022, DHS placed her in removal proceedings under section 240 of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1229a, by issuing a Notice to Appear (NTA).  The NTA charged petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. [Doc. #6-1].  The same day, DHS released petitioner under an order of release on recognizance, subject to various conditions [Doc. #1-1].  The release order was issued in accordance with section 236 of the INA, codified at 8 U.S.C. § 1226, and applicable regulations.  *Id*.[3]  The record indicates, in October 2023, petitioner filed an application for asylum and withholding of removal. [Doc. #6-2].  So far as appears from the present record, she remained in conditional release or parole status, with removal proceedings and the asylum application pending, until she was re-apprehended by ICE on February 10, 2026, while appearing for a scheduled reporting appointment.  [Doc. #1, ¶ 23].  According to petitioner, she was detained at that time without any "notice, justification, or individualized explanation" for her re-apprehension or of any indication of a "violation of the conditions of release" that would warrant revocation of her release order.  *Id*.  The respondents do not dispute that petitioner's

---

[2] *Department of Homeland Security.*

[3] *Release on one's own recognizance is a form of conditional parole under 8 U.S.C. § 1226(a)(2)(B).  See* Ortega-Cervantes v. Gonzales, *501 F.3d 1111, 1115 (9th Cir. 2007).*

conditional release or parole status or the description of the circumstances surrounding her re-apprehension.  The record indicates petitioner requested a custody redetermination which was denied for lack of jurisdiction.  [Doc. #6-4].  Petitioner is currently detained by ICE at the Diamondback Correctional Facility in Watonga, Oklahoma.

In her petition, petitioner asserts four claims as the basis for habeas relief.  Unlike most similarly situated persons who have sought habeas relief arising out of the current surge in deportations, petitioner explicitly does not seek relief based on violations of the provisions of the INA, and she does not contest the government's assertion that she is held pursuant to § 1225(b)(2)(A).[4]  Rather, she contends that her re-apprehension and her continued detention without an individualized custody determination is contrary to the Fifth Amendment's Due Process protections, or that it constitutes violations of equal protection principles, the Supremacy Clause, or of the Administrative Procedure Act. Upon review, the court agrees respondents violated petitioner's procedural due process rights when they summarily revoked her conditional parole without notice and an opportunity to respond.  Therefore, the court will grant petitioner's habeas petition in part.[5]

The Fifth Amendment Due Process Clause prohibits the federal government from "'depriv[ing]' any 'person . . . of life, liberty, or property, without due process of law.'"

---

[4] *However, based on the Tenth Circuit's recent ruling, <u>Santillan Quiroz v. Mullin</u>, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026), and prior rulings of this court, including <u>Huang v. Grant</u>, CIV-26-853-HE, Order dated May 21, 2026, doc. #8, petitioner is not properly detained under § 1225(b)(2)(A).*

[5] *In light of the court's ruling, the court need not address petitioner's other claims for habeas relief.*

Santillan Quiroz v. Mullin, No. 26-6019, 2026 WL 1876709, at *16 (10th Cir. June 30, 2026) (quoting U.S. Const. amend. V).  It applies "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  A procedural due process claim is examined in two steps: "whether there exists a liberty or property interest which has been interfered with by the [federal government]," and "whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

In the immigration context, "the nature of [due process] protection may vary depending upon [immigration] status and circumstance[.]"  Zadvydas, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings."  Trump v. J. G. G., 604 U.S. 670, 673 (2025).  Nonetheless, "'[i]n the exercise of its broad power over naturalization and immigration, Congress may make rules as to alien that would be unacceptable if applied to citizens.'"  Santillan Quiroz, 2026 WL 1876709, at * 16 (quoting Demore v. Kim, 538 U.S. 510, 526 (2003)).

Here, rather than keeping petitioner in detention initially, ICE released her on her own recognizance or on conditional parole under § 1226(a).[6]  As such, the court concludes petitioner has a protected "liberty interest in [her] continued release on conditional parole[.]" Joseph Antonio Ferrufino Guerrero, Petitioner v. Markwayne Mullin, in their

---

[6] *In so doing, ICE decided petitioner was neither a danger to the community nor a flight risk.  See Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021) (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2020)).*

official capacity as Secretary of the U.S. Dep't of Homeland Security, et al., Respondents,

No. 4:26CV3146, 2026 WL 1679263,  at *4 (D. Neb. June 10, 2026); *see also* Diallo v.

Orozco, No. 2:26-cv-00066-MLG-JHR, 2026 WL 608746, at *3 (D.N.M. Mar. 4, 2026)

("'Even when the government has discretion to detain an individual, its subsequent

decision to release the individual creates "an implicit promise" that [she] will be re-

detained only if [she] violates the conditions of [her] release.'") (quoting Pablo Sequen v.

Albarran, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) (quoting Morrissey v. Brewer, 408

U.S. 471, 482 (1972)).

"That liberty interest, 'at the very least, entitles [petitioner] to the procedures

authorized by Congress.'" Ferrufino Guerrero, 2026 WL 1679263, at *4 (quoting Singh

v. Noem, 2026 WL 766228, at *6 (D.N.M. Mar. 18, 2026)).   And based on the

circumstances of this case, "even the 'minimal procedural due process rights [petitioner] is

statutorily afforded' were violated." *Id*.  Under 8 U.S.C. § 1226(b), the government "at

any time may revoke a bond or parole authorized under subsection (a), rearrest the alien

under the original warrant, and detained the alien." *Id*.  An implementing regulation

provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained.  If detained, unless a breach has occurred, any outstanding bond shall be revoked or canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

The statute gives the government "'immense discretion.'" Ferrufino Guerrero, 2026 WL 1679263, at *5 (quoting Singh, 2026 WL 766228, at *8).  Nonetheless, as the regulation indicates, that discretion must be exercised by certain designated officials.  Here, the record does not show that any of the designated officials exercised discretion to revoke petitioner's conditional parole.  The section of petitioner's release order relating to cancellation of release is blank.  [Doc. #1-1].  That suggests no officer, let alone a designated officer, revoked petitioner's conditional parole.  See Tumba v. Francis, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025) ("[T]he Government retains significant discretion in revoking conditional parole . . . But Due Process still requires that such discretion actually be exercised[.]").  Further, there is no indication that petitioner was rearrested under the original warrant.  Thus, it appears the government failed to comply with the statutory and regulatory regime governing revocation of conditional parole.

In addition, the federal respondents have made no showing of any changed circumstances justifying revocation of the release order.  Sandhu v. Mullin, 7:26CV5009, 2026 WL 1146643, at *4 (D. Neb. April 28, 2026) ("Beyond the *who* may revoke [petitioner's] conditional parole, there is also no evidence of *why* it was revoked.") (emphasis in original).  "To revoke [petitioner's] conditional parole 'arbitrarily—without process and with no allegation of changed circumstances or violation by [petitioner]—is fundamentally unfair.'" *Id*. (quoting Betancourth v. Tate, Civil Action No. 4:26-cv-01169, 2026 WL 638482, at *3 (S.D. Tex. Mar. 6, 2026)).  Further, even if there was a reason petitioner's conditional parole was revoked, there is no evidence she was ever given a notice or opportunity to respond. *Id*.; Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The

6

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (quotation marks and citation omitted).  "Revocation of petitioner's parole and her re-detention, without notice of the revocation and an opportunity to respond, fell short of the process [she] is due."  Sandhu, 2026 WL 1146643, at *5; *see also* Diallo, 2026 WL 608746, at **3-4 (determining due process requires a petitioner who was released on his own recognizance to receive hearing before an immigration judge prior to re-detention, after applying the three-factor test in Mathews v. Eldridge).[7]

In sum, the court concludes petitioner is entitled to habeas relief based on her procedural due process claim which challenges her summarily-revoked conditional parole. As to a remedy, petitioner seeks immediate release, or alternatively, if the court orders a bond hearing, it also order the burden be placed on the government to prove she is either a flight risk or a danger to the community.  The court concludes release is appropriate.  There is no showing in the record that petitioner's conditional parole was properly revoked.  A

---

[7] *The court has also weighed the factors under* Mathews v. Eldridge.  *Having considered (1) the private interest that will be affected by the official action (private interest in remaining out of custody), (2) the risk of erroneous deprivation of that interest through procedures used (petitioner has been erroneously deprived of her private interest with respondents summarily revoking her conditional parole), and the probable value, if any, of additional or substitute procedural safeguards (a pre-detention hearing where there must be a material change in circumstances as to whether petitioner poses flight risk or danger to community would ensure any future detention of petitioner is lawful), and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail (government has interest in detaining petitioner during pendency of removal proceedings, but in releasing petitioner, it determined she was not a flight risk or danger to community and the cost of a pre-detention hearing to determine a material change in circumstances would be minimal), see id. at 335, the court concludes all three factors weigh in petitioner's favor.  The court concludes that due process requires petitioner to receive notice and an opportunity to respond before her conditional parole is revoked.*

lesser measure, like ordering a bond hearing, "'cannot cure the fact that [petitioner] is detained while [her] conditional parole is still ongoing because it has not been properly terminated.'" Sandhu, 2026 WL 1146643, at *5 (quoting Singh, 2026 WL 766228, at *10). "To remedy that breach, [petitioner] must be released and put in the same position [she] was in before [her] re-detention—i.e., on conditional parole subject to the conditions set out in the order of release on recognizance." *Id.* (citing Singh, 2026 WL 1021846, at *4).

Accordingly, the petition for a writ of habeas corpus [Doc. #1] is **GRANTED in part**. Respondents are **ORDERED** to release petitioner within **twenty-four (24) hours** of the entry of this order under the same conditions that were in place prior to her detention. Respondents are **ORDERED** to certify compliance by filing a status report within **ten (10) business days** of the court's order.

In light of the court's ruling, the motion for judgment on the pleadings [Doc. #8] is **STRICKEN as MOOT**.

**IT IS SO ORDERED**.

Dated this 13th day of July, 2026.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE